UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES R. TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:15-cv-01363-RLY-DKL |
| | ) | |
| NATIONSTAR MORTGAGE, LLC, | ) | |
| formerly known as CENTEX HOME | ) | |
| EQUITY COMPANY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, PLAINTIFF'S MOTION FOR LEAVE TO FILE ADDITIONAL EVIDENCE, and PLAINTIFF'S MOTION TO STRIKE A PORTION OF NATIONSTAR'S SUR-SURREPLY**

The parties' dispute centers on a foreclosure action instituted by Defendant, Nationstar Mortgage, LLC, against Plaintiff, James R. Turner. After many years of litigation, the parties settled the dispute. Notwithstanding the settlement, Turner pursues claims against Nationstar under the Indiana Home Loan Practices Act ("IHLPA"), the Real Estate Settlement Procedures Act ("RESPA"), and the Fair Debt Collection Practices Act ("FDCPA"). Nationstar now moves for summary judgment, and Plaintiff moves for leave to file additional evidence. For the reasons explained below, Nationstar's Motion for Summary Judgment is **GRANTED in part and DENIED in part**, Plaintiff's Motion for Leave to File Additional Evidence is **DENIED**, and Plaintiff's Motion for Leave to Strike a Portion of Nationstar's Sur-Surreply is **DENIED**.

1

**I.     Background**

On April 26, 2004, Plaintiff and his wife, Janet C. Turner (now deceased) (collectively the "Turners"), executed and delivered to Centex Home Equity Company, LLC an adjustable rate note in the principal amount of $267,750.00. (Filing No. 24-1, Affidavit of Fay Janati ("Janati Aff.") ¶ 5 and Ex. A-1, Adjustable Rate Note). To secure the indebtedness on the Note, the Turners executed a mortgage in favor of Centex on the property located at 6271 ½ McNeely Street, Ellettsville, Indiana. (*Id.* ¶ 6 and Ex. A-2, Mortgage). The property, which sits on 6.62 acres of land, is a rental house that was built for Plaintiff's step-daughter and her husband. (Filing No. 30, Affidavit of James R. Turner ("Plaintiff Aff.") ¶¶ 5, 7).

By 2007, due to interest rate hikes, the Turners' mortgage doubled. (*Id.* ¶ 15). They contacted Nationstar[1] and, on March 17, 2008, it agreed to modify the Loan. (*Id.*). As party of the Loan modification, the Turners signed a General Release that "fully, finally completely and generally" released Nationstar from "any and all claims, actions, demands and/or causes of action, . . . arising from, relating to, or in any way connected" with the Loan. (Janati Aff. ¶ 7 and Ex. A-3, General Release).

The Turners' payments fell behind, prompting Nationstar to file a Foreclosure Action in the Monroe Circuit Court, Cause No. 53C04-1001-MF-0013, on January 5, 2010. (Plaintiff Aff. ¶ 16). On October 9, 2012, the Turners filed an Amended

---

[1] Centex changed its name to Nationstar Mortgage, LLC on July 12, 2006. (Filing No. 10, First Amended Complaint ¶ 30).

Counterclaim seeking damages for Centex's alleged violations of the IHLPA occurring at the origination of the Loan and rescission of the General Release. (Filing No. 24-3, Amended Counterclaim).

On October 18, 2012, the parties met for a formal and confidential Mediation of the Foreclosure Action, and entered into a Settlement Agreement, the terms of which required the Turners to:

- Pay $5,000 to Nationstar on or before October 25, 2012;

- Pay $19,000 to Nationstar on or before February 1, 2013;

- Execute all documents necessary for the parties to enter into a mortgage modification agreement, the terms of which were described in the Settlement Agreement; and

- Execute an Agreed Judgment of Foreclosure in the amount of $345,000 (less any cash payments made by the Turners), which included a dismissal of the Counterclaim, and was only to be filed if the Turners failed to make the cash payments described within the Settlement Agreement.

(Filing No. 24-6, Ex. A, Settlement Agreement). Plaintiff alleges that Nationstar failed to disclose during the Mediation that Nationstar was merely the servicer, and not the owner, of the Turners' mortgage. (Plaintiff Aff. ¶ 20). According to Plaintiff, since any modification was subject to the mortgage owner's program terms, they should have been entitled to the modification "whether [they] gave up [their] counterclaim for $565,029.54 or not." (*Id.* ¶ 21).

The Turners were unable to pay Nationstar $19,000 before February 1, 2013. (*Id.* ¶ 13). On April 25, 2013, Nationstar filed a Motion to Enforce Settlement Agreement. (*Id.* ¶ 22; First Amended Complaint ¶ 46).

On August 15, 2013, Plaintiff filed for Chapter 13 Bankruptcy protection "in hopes of curing the defaulted $19,000 payment." (Plaintiff Aff. ¶ 23). Throughout the case, Plaintiff made various payments to Nationstar, which he originally claimed totaled $18,878.02, but now claims total $16,645.99. (*Compare* Filing No. 30-13, Ex. M, June Letter, *with* Plaintiff Aff. ¶ 32). The Bankruptcy Court refused to allow Plaintiff to cure the breach of the Settlement Agreement by paying $19,000 as part of a bankruptcy plan. (Filing No. 24-5, Bankruptcy Order). Plaintiff filed a motion to dismiss the bankruptcy on May 8, 2014, which the Bankruptcy Court granted the following day. (Plaintiff Aff. ¶ 26). Soon thereafter, Plaintiff's wife was diagnosed with terminal cancer. (*Id.* ¶ 37).

On August 28, 2014, Plaintiff sent a letter to Nationstar's counsel in the Foreclosure Action requesting verification of the owner of the Loan. (*Id.* ¶ 29). On November 5, 2014, Nationstar mailed Plaintiff a letter identifying Nationstar as the servicer of the Loan and JP Morgan Chase Bank as Trustee for CHEC 2004-C ("Chase") as the owner of the Loan. (*Id.*, Ex. K, Nationstar Letter).

On January 22, 2015, the Monroe Circuit Court entered its Judgment of Foreclosure resolving the Foreclosure Action in Nationstar's favor and dismissing the Counterclaim with prejudice. (Janati Aff., Ex. A-4, Judgment of Foreclosure). The following day, the court entered its Order Granting Plaintiff's Motion to Enforce Settlement Agreement. (Filing No. 24-8, Order). Thereafter, Nationstar issued a check to the Turners returning $7,232.03 as insufficient to reinstate the Loan. (Plaintiff Aff. ¶ 32; First Amended Complaint, Ex. B, Check and Ex. C, Letter). The Turners mailed a letter dated March 20, 2015, inquiring about the payments made to Nationstar during the

4

Bankruptcy Case because they believed the Refund was miscalculated. (First Amended Complaint, Ex. D, Letter). Nationstar received the letter on June 15, 2015 ("June Letter"). (*Id.*, Ex. F, Certified Receipt of Letter).

Meanwhile, on February 17, 2015, the Turners filed a motion to correct error in the Monroe Circuit Court, arguing they were prejudiced in negotiating the dismissal of the Counterclaim with Nationstar instead of Chase. The court denied the motion. (Filing No. 24-11, Order). The court's judgment was later affirmed by the Indiana Court of Appeals. *See Turner v. Nationstar Mortgage, LLC*, 45 N.E. 3d 1257 (Ind. Ct. App. 2015).

On June 11, 2015, Plaintiff applied for a modification of the Loan from Nationstar. (Plaintiff Aff. ¶ 51). After asking for more documentation from Plaintiff, Nationstar denied the request on July 25, 2015. (*Id.* ¶¶ 52-53). In particular, Nationstar noted that the "proposed modified monthly payment which we could offer you, which includes a modified monthly principal and interest payment on your first lien mortgage loan, plus property taxes, . . . , was less than 10% OR more than 55% of your monthly gross income." (*Id.*, Ex. P).

On August 7, 2015, Plaintiff, by counsel, sent Nationstar a letter regarding its denial of his request for a modification of the Loan, asking for, *inter alia*, the amount of the "proposed monthly payment." (*Id.* ¶ 54). To date, Nationstar has not provided that information. (*Id.* ¶ 56).

Between February 2015 and September 2015, Nationstar mailed Plaintiff monthly statements regarding the Loan notwithstanding the Foreclosure Judgment. (*Id.* ¶ 50; First Amended Complaint ¶ 121 and Exs. J-P).

On January 7, 2016, Plaintiff and Nationstar entered into a Home Affordable Modification Agreement (the "2016 Loan Modification"), permanently modifying the Loan. (Janati Aff. ¶10). Pursuant to the 2016 Loan Modification, the Foreclosure Judgment will be vacated and the Foreclosure Action dismissed. (*Id.*).

## II. Preliminary Motions

### A. Plaintiff's Motion for Leave to File Additional Evidence

Before addressing the merits of Nationstar's motion, the court must first address Plaintiff's Motion for Leave to File Additional Evidence, which was filed pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. In particular, Plaintiff moves for leave to submit the Pooling and Servicing Agreement[2] ("PSA") pertaining to his original mortgage with Centex Home Equity Company, LLC. The PSA, among other things, establishes Centex (later Nationstar) as the servicer and Chase as the owner of the Loan. Rule 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to

---

[2] "A Pooling and Servicing Agreement (PSA) is the legal document that lays out the rights and obligations of certain parties over a pool of securitized mortgage loans." *What is a pooling and servicing agreement (PSA) in the mortgage industry?*, Nolo (Jan. 4, 2017, 8:53 AM), http://www.nolo.com/legal-encyclopedia/what-pooling-servicing-agreement-psa-the-mortgage-industry.html.

take discovery; or (3) issue any other appropriate order." Fed. R. Civ. Pro. 56(d); *Columbus Reg'l Hosp. v. Fed. Emergency Mgmt. Admin.,* No. 1:10-cv-1168-SEB-MJD, 2012 WL 1066793, at *2 (S.D. Ind. Mar. 28, 2012).

According to Plaintiff, the PSA bolsters his argument that Nationstar had a duty to consider only whether he qualified for a loan modification during the October 2012 Mediation. (*See* Filing No. 80, Motion for Leave to File Additional Evidence at 5 ("The servicer (Nationstar) was duty bound to consider only whether the modification would benefit the Trust as the owner of the mortgage.")). Therefore, he argues, "[t]here was no reason for [Plaintiff] to bargain away his counterclaims in the state court foreclosure case in order to obtain the modification to which Nationstar agreed in the October 2012 mediation." (*Id*.).

Plaintiff has been aware that Nationstar was the servicer of the Loan since November 2014, yet he requested a copy of the PSA over a month after Nationstar filed its Reply in Support of its Motion for Summary Judgment. This alone is enough to deny Plaintiff's motion. *See Pfeil v. Rogers*, 757 F.2d 850, 857 (7th Cir. 1985) ("When a party fails to secure discoverable evidence due to his own lack of diligence, it is not an abuse of discretion for the trial court to refuse to grant a [Rule 56] continuance to obtain such information."). Furthermore, the PSA does not support Plaintiff's argument. Pursuant to that document, Nationstar had the authority to institute foreclosure proceedings on behalf of the Trust, and it did. (Filing No. 79-2, PSA § 8.01) ("The Servicer will exercise its discretion consistent with customary servicing procedures and the terms of this Agreement, with respect to the enforcement and servicing of defaulted Home Equity

7

Loans in such manner as will maximize the receipt of principal and interest with respect thereto, including but not limited to . . . the modification of such Home Equity Loans, or foreclosure upon the related Property and disposition thereof."). Plaintiff, in turn, filed a Counterclaim against Centex/Nationstar. The parties mediated the matter and entered into a negotiated Settlement Agreement. Whether or not Plaintiff qualified for a loan modification in October 2012 is a totally separate matter and one not before the court. But even if it were, the PSA would not support that argument. Thus, the PSA does not add any facts "essential to justify [Plaintiff's] opposition." (Fed. R. Civ. P. 56(d)). Accordingly, Plaintiff's Motion for Leave to File Additional Evidence is **DENIED**.

    **B.**    **Motion to Strike**

Plaintiff also moves to strike a portion of Nationstar's Sur-Surreply. The portion at issue relates to *Turner v. Nationstar*, *supra*., wherein the Indiana Court of Appeals held that Plaintiff was not damaged by negotiating with Nationstar in the Foreclosure Action because "Nationstar was responsible for responding to any concerns about servicing the loan, which included payment assistance and modifications and foreclosure proceedings." 45 N.E. 3d at 1263. Plaintiff argues that because the decision has been vacated, it is irrelevant and inadmissible. The court did not rely upon any portion of the Court of Appeal's decision; therefore, Plaintiff's Motion to Strike a Portion of Nationstar's Sur-Surreply is **DENIED as MOOT**.

**III.**    **Summary Judgment Standard**

Federal Rule of Civil Procedure 56 requires the court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the

8

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The facts of this case are largely undisputed. Therefore, disposition of this case on summary judgment is particularly appropriate.

**IV. Discussion**

    **A. Real Estate Settlement Procedures Act**

Congress enacted RESPA to create "significant reforms in the real estate settlement process" and to ensure that consumers were "provided with greater and more timely information on the nature and costs of the settlement process and protected from unnecessarily high settlement charges." 12 U.S.C. § 2601(a). "'RESPA prescribes certain actions to be followed by entities or persons responsible for servicing federally related mortgage loans, including responding to borrower inquiries.'" *Martini v. JPMorgan Chase Bank, N.A.*, 634 Fed. Appx. 159, 163 (6th Cir. 2015) (quoting *McLean v. GMAC Morg. Corp.*, 398 Fed. Appx. 467, 471 (11th Cir. 2010)). Pertinent to this action is Section 2605 of RESPA, which requires a loan servicer, like Nationstar, to respond to inquiries from a borrower. *See* 12 U.S.C. § 2605(e). Pursuant to Section 2605(e), if a loan servicer receives a "qualified written request [or "QWR"] from the borrower" for information relating to the servicing of the borrower's loan, "the servicer shall provide a written response" appropriately responding to the borrower's request and providing any requested documentation. 12 U.S.C. § 2605(e)(1)(A) & (2)(C). Similarly, pursuant to Section 2605(k), a loan servicer shall provide "the identity, address, and other relevant contact information about the owner or assignee of the loan" when requested by the borrower. *Id*. § 2605(k)(1)(D). If a loan servicer violates these provisions, the

borrower may recover actual damages as well as statutory damages up to $2,000 if the damages are based on "a pattern or practice of noncompliance." *Id.* § 2605(f)(1)(B). Plaintiff brings four claims under RESPA (Counts II-V). The court will begin its discussion with Count II.

### 1. Count II, Violations of 12 U.S.C. § 2605(k)(1)(D)

In Count II, Plaintiff alleges Nationstar violated Section 2605(k)(1)(D) by failing to respond to his letter dated August 28, 2014, regarding the owner of his Loan, within ten business days. Nationstar concedes liability; it did not respond to his inquiry until November 5, 2014. Nevertheless, it argues Plaintiff cannot prevail as a matter of law because he did not suffer actual damages.

Actual damages are those that arise "as a result of the failure [to comply with Section 2605(e)]." *Id.* § 2605(f)(1)(A). Actual damages under RESPA include those for emotional distress. *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 696 (7th Cir. 2011). In support of Plaintiff's claim for damages, he testified:

- "I was faced with what seemed like imminent foreclosure with my only hope being that Nationstar would put me in touch with the true owner of the loan and I could negotiate for a modification."
- "The family complex . . . would be broken up; I would be living next to strangers with no control over who moved in."
- "[M]y wife was in pain and dying and I couldn't do anything about any of it."

- "I didn't know what my friends would think of me when they saw the foreclosure notice in the paper. It would be embarrassing."
- "Distraught, anxious, embarrassed, humiliated, helpless and afraid are some words that only partly describe what this was doing to me."

(Plaintiff Aff. ¶ 39).

Plaintiff's testimony does not establish that his alleged distress was "as a result of" Nationstar's failure to respond to his August 2014 Letter. Instead, it arose from the stress of the Foreclosure Action, concerns regarding his reputation in the community, his wife's terminal illness, and the fear of "living next to strangers with no control over who moved in." (*Id.*). Furthermore, as the November 2014 Letter indicated, Plaintiff had been communicating with the correct entity regarding modification, Nationstar. (*Id.* ¶ 41 and Ex. K). Accordingly, Plaintiff has not demonstrated any damages caused by Nationstar as required by Section 2605(f)(1)(A). Therefore, Nationstar's motion for summary judgment on Count II must be **GRANTED**.

### 2. Counts III & IV, Violations of 12 U.S.C. §§ 2605(e)(1) & (2)

In Count III, Plaintiff alleges Nationstar violated Section 2605(e)(1)(A) when it failed to acknowledge receipt of his June 2015 Letter within five business days of receipt. And in Count IV, Plaintiff alleges Nationstar violated Section 2605(e)(2)(C)(i) when it failed to provide Plaintiff with the information requested by the June Letter within thirty (30) business days of receipt. The Letter at issue reads, in relevant part:

> I am in receipt of your check # 3480108 in the amount of $5,000.00 and $2,232,03. I don't understand your math. In November 2013[,] I sent

Nationstar $2,542.31, along with $1,517.28, for the following 5 months, making a total of $18,878.02.[3] Your check (copy included) amount was $7,232.03, leaving a balance due of $11,645.99. Please mail balance due as reflected on copy of check.

(Filing No. 30-13, June Letter). Nationstar argues the June Letter was not a QWR; therefore, it had no statutory duty to respond.

RESPA defines a qualified written request as follows:

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—

**(i)** includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

**(ii)** includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

"Any reasonably stated written request for account information can be a qualified written request." *Catalan*, 629 F.3d at 687. At the same time, "the statutory duty to respond does not arise with respect to all inquiries or complaints from borrowers to servicers." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012), *cert. denied*, 133 S.Ct. 2800 (2013). In particular, a QWR must relate to servicing; thus, a borrower's request for loan origination information or for a loan modification does not qualify. *Id.* at 666-67; *MorEquity, Inc. v. Naeem,* 118 F. Supp. 2d 885, 901 (N.D. Ill.

---

[3] Plaintiff's affidavit includes copies of the seven checks sent to Nationstar. (*See* Plaintiff Aff., Ex. F). As noted on pages 3-4 of this Entry, the checks total $16,645.99, not $18,878.02. Therefore, he now contends Nationstar owes him $9,413.96. (*Id.*).

12

2000) (a request for information relating to validity of loan documents was not a request for information relating to servicing of the loan).

Nationstar argues Plaintiff's June Letter was not a QWR because it does not relate to servicing the Loan; instead, it relates solely to Plaintiff's request for a refund of the payments he made during the pendency of the Bankruptcy Case. RESPA defines the term "servicing" to encompass "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . , and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *Id.* § 2605(i)(3).

The court finds Plaintiff's June Letter, which questioned Nationstar's refund of the payments he made in an attempt to stave off foreclosure, was a request for information regarding the servicing of the Loan. *See Marais v. Chase Home Fin., LLC*, 24 F.Supp.3d 712, 722 (S.D. Ohio 2014) (finding borrower's letter challenging late fees and payment allocation was a QWR). In the Letter, he questioned Nationstar's receipt of payments because, according to his records (and based on his Letter), he sent five payments totaling $18,878.02 toward his Loan, but was refunded only $7,232.03. As Nationstar advances no other arguments in support of summary judgment, the court finds its motion with respect to Counts III and IV of Plaintiff's First Amended Complaint must be **DENIED**.

### 3. Count V, Violation of 12 U.S.C. § 2605(e)(2)

In Count V, Plaintiff alleges Nationstar violated Section 2605(e)(2)(C)(i) when it failed to provide him the information requested in his August 2015 Letter within thirty

13

days of receipt. That Letter was sent after Nationstar denied Plaintiff's request for a loan modification, and asked Nationstar to answer questions regarding the proposed monthly payment, including "the amount of the 'proposed monthly payment'; the interest rate used to calculate the 'proposed monthly payment'; [and] the amount used as 'verified income' as that term is used in the Denial Letter." (Plaintiff Aff., Ex. Q). Nationstar argues this Letter relates to Plaintiff's June 2015 request for a loan modification and, as such, is not a request regarding the servicing of the loan. Therefore, it continues, Nationstar was not required by RESPA to respond to the August 2015 Letter. According to Plaintiff, under the most current version of the Code of Federal Regulations, 12 C.F.R. § 1024.41 (2014), the processing of applications for loan modifications is an aspect of loan servicing.

Section 1024.41 outlines the timeliness required for servicers to respond to requests for loss mitigation and the appeals process available to borrowers who wish to contest a denial of loss mitigation. By its terms, a servicer has no duty to provide a borrower with loss mitigation options like loan modification. 12 C.F.R. § 1024.41(a) ("Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option."). Accordingly, the court finds Nationstar is correct; it was not required by RESPA to respond to the August 2015 Letter. *See In re Salvador*, 456 B.R. 610, 623 (Bankr. M. D. Ga. 2011) (holding that RESPA does not obligate servicers to respond to requests for information pertaining to a failed attempt to modify a loan; such information is "outside the scope of the term 'servicing' as defined in

[RESPA's implementing regulations, codified at 24 C.F.R. § 3500.2[4]]"); *Saucedo v. Bank of America, N.A.,* No. 3:11–cv–00813–MO, 2011 WL 6014008, at *2 (D. Or. Dec. 1, 2011) ("The denial of a loan modification is not 'servicing.'"); *Williams v. Wells Fargo Bank, N.A., Inc.,* No. C 10-00399 JF (HRL), 2010 WL 1463521 at *3 (N.D. Cal. April 13, 2010) (a request for documents relating to borrowers' options for loan modification, short sale, or bankruptcy was not a request for information relating to the servicing of the loan). Nationstar is thus entitled to summary judgment on Count V. Its motion for summary judgment on Count V is therefore **GRANTED**.

### 4. Statutory Damages

Counts II, III, IV, and V seek to recover statutory damages up to $2,000 pursuant to 12 U.S.C. § 2605(f)(1). Such damages are available in "the case of a pattern or practice of noncompliance with the requirements of [RESPA]." *Id.* Here, the court found one violation. A pattern or practice of noncompliance requires more than one violation. *See Maxwell v. Fairbanks Capital Corp.,* 281 B.R. 101, 123 (Bankr. D. Mass. 2002) (two failures to respond did not constitute a "pattern or practice"); *In re Tomasevic,* 273 B.R. 682 (Bankr. M.D. Fla. 2002) (one failure to respond did not constitute a "pattern or practice"); *but see Ploog v. HomeSide Lending, Inc.,* 209 F. Supp. 2d 863, 869 (N.D. Ill. 2002) (failure to respond to five qualified written requests constituted a "pattern or practice"). Accordingly, Plaintiff is not entitled to statutory damages. Nationstar's motion for summary judgment on this claim is **GRANTED**.

---

[4] As noted above, the current regulation is cited at 12 C.F.R. § 1024.41.

B.  **Indiana Home Loan Practices Act**

In Count I, Plaintiff alleges Nationstar violated the IHLPA, Indiana Code § 24-9-1-1 *et seq.*, for actions purportedly taken at the Mediation of the Foreclosure Action held on October 18, 2012. Specifically, he alleges "Nationstar committed a deceptive act under Indiana Code § 24-9-3-7(c)(3) . . . by allowing Plaintiff to continue under the false belief that Nationstar owned the Mortgage loan such that Plaintiff believed he was bargaining with the owner of the Mortgage loan when he agreed to exchange his counterclaim against Nationstar for a loan modification." (First Amended Complaint ¶ 82). Nationstar argues Plaintiff cannot demonstrate that either a deceptive act or a mortgage transaction occurred at the Mediation. Plaintiff disagrees.

A "deceptive act" is defined as:

(a) (1) an act or a practice as part of a mortgage transaction . . . , in which a person at the time of the transaction knowingly or intentionally:

(A) makes a material misrepresentation; or

(B) conceals material information regarding the terms or conditions of the transaction. . . .

Ind. Code § 24-9-2-7 (1)(a). Here, Nationstar did not conceal *material* information from Plaintiff because Nationstar was the proper party to resolve the Foreclosure Action. (*See* Plaintiff Aff., Ex. K at 3 ("[T]he servicer is able to perform the services and duties incident to the servicing of the mortgage loan, such as foreclosure actions, bankruptcy cases, and other legal proceedings.")). Having so found, the court need not address

16

whether the transaction was a mortgage transaction. Nationstar's motion for summary judgment on Count I of Plaintiff's First Amended Complaint is **GRANTED**.

### C. Fair Debt Collection Practices Act

In Count VI, Plaintiff alleges Nationstar violated 15 U.S.C. § 1692e (2)(A) after the Judgment in the Foreclosure Action was entered in January 2015, "by sending Plaintiff statements indicating an amount other than $340,000 was owed." (First Amended Complaint ¶ 121 and Exs. J-P). "For the FDCPA to apply, [ ] two threshold criteria must be met." *Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 384 (7th Cir. 2010). "First, the defendant must qualify as a 'debt collector,'" and "[s]econd, the communication by the debt collector that forms the basis of the suit must have been made 'in connection with the collection of any debt.'" *Id.* (quoting 15 U.S.C. §§ 1692a(6), 1692c(a)–(b), 1692e, 1692g). Nationstar argues it is not a debt collector and, therefore, it is not liable under the FDCPA.

> The FDCPA defines a debt collector as
>
> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

*Id.* § 1692a(6). Servicing agents are not debt collectors within the meaning of the FDCPA unless the debt was in arrears at the time it obtained that role. *Carter v. AMC, LLC*, 645 F.3d 840, 843 (7th Cir. 2011) ("A servicing agent 'obtains' a debt in the sense that it acquires the authority to collect the money on behalf of another," and thus, is not a debt collector under the FDCPA). As Nationstar was the original creditor of the Loan

17

and became the mortgage servicer of the Loan well before it was in default, Nationstar is not a "debt collector" within the meaning of the FDCPA. Nationstar's motion for summary judgment on Count VI of Plaintiff's First Amended Complaint is therefore **GRANTED**.

## V. Conclusion

For the reasons explained above, the court **GRANTS** Nationstar's Motion for Summary Judgment (Filing No. 22) on Counts I, II, V, and VI, and **DENIES** the Motion on Counts III and IV. Furthermore, Plaintiff's Motion for Leave to File Additional Evidence (Filing No. 79) is **DENIED**, and Plaintiff's Motion to Strike Portions of Nationstar's Sur-Surreply (Filing No. 81) is **DENIED as MOOT**.

**SO ORDERED** this 17th day of January 2017.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.